

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4952 | **DATE** | 7/23/2003 |
| **CASE TITLE** | Lorenzo Wince vs. Michael F. Sheahan, John Doe, Jim R | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons set forth in the attached Memorandum Opinion and Order, defendants' motion for summary judgment is GRANTED [9-1]. Plaintiff's motion to strike defendants' motion for summary judgment is DENIED [15-1]. Plaintiff is asking this Court to sanction Defendants for failure to comply with the Scheduling Order or timely answer plaintiff's discovery requests. Plaintiff, however, never filed a motion for order compelling Disclosure or Discovery under F.R.Civ.P. 37(a). All other motions are moot and terminated. This action is closed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 25 2003 | |
| | Notified counsel by telephone. | | date docketed | 20 |
| X | Docketing to mail notices. | | docketing deputy initials | |
| X | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| klb (lc) | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LORENZO WINCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 02 C 4952 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| MICHAEL F. SHEAHAN, SHERIFF OF ) | |
| COOK COUNTY, JOHN DOE AND JIM ) | |
| ROE, AND COUNTY OF COOK ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff filed a three-count Complaint in the Circuit Court of Cook County alleging that he was denied medical treatment and subjected to unlawful physical abuse while a pretrial detainee at the Cook County Department of Corrections. Defendants removed plaintiff's action to federal court because the Complaint was brought pursuant to 42 U.S.C. § 1983. Before this court is defendants' motion for summary judgment. For the reasons set forth below, defendants' motion for summary judgment is granted.

I.  Factual Background

Plaintiff is Lorenzo Wince ("Wince" or "plaintiff"), a former detainee of Cook County Department of Corrections ("CCDOC"). On May 5, 2000, plaintiff poked a Chicago police officer in the face, an officer who was responding to a domestic battery call at plaintiff's residence. Plaintiff was picked up by the Chicago Police Department ("CPD") on June 10, 2000 after a warrant was issued for his failure to appear before the Circuit Court of Cook County on

-1-

20

the counts of Battery and Resisting/Obstructing a Police Officer. After being picked up on the warrant, plaintiff was taken to District Three of the Chicago Police Department, where he was fingerprinted, photographed, and then placed in cell A-4.

On June 11, 2000, CPD transferred custody of the plaintiff to the Cook County's Sheriff's department at the CCDOC, where plaintiff appeared before Judge Fleming who was located at Branch 35 via video court. On the State's motion, Judge Fleming continued the matter to the following day, June 12, 2000 at 9:00 a.m. Plaintiff was incarcerated at CCDOC from June 11, 2000 through June 12, 2000. Plaintiff had surgery on his neck in 1998. When plaintiff arrived at CCDOC on June 11, 2000, his neck showed no visible signs of injury relating to his neck surgery in 1998, except for a scar on the back of his neck. When plaintiff arrived at CCDOC, he was placed in an area with several other inmates. An unnamed light-skinned African American officer then told the inmates to stand in a half squatting position with their feet flat on the floor, knees slightly bent, with heads bent backwards, and their hands by their heads. Plaintiff, although complaining about his neck, complied, along with the other inmates. Plaintiff stated that at no time during this period did the unnamed light-skinned African American officer tell plaintiff that if he did not comply, he would be struck with a board. Plaintiff stated that at no time during this period did the unnamed light-skinned African American officer raise a hand containing a board towards plaintiff.

After plaintiff and the other inmates complied with the light-skinned African American officer's orders, the inmates and plaintiff went into another area where they were all searched. Plaintiff stated that he was not threatened by any guard during this search procedure. After plaintiff was searched, he and several other inmates were taken by three unnamed guards to

where plaintiff was to be housed - Division 8, in the Residential Treatment Unit ("RTU"). Plaintiff walked slower than the other inmates to Division 8, RTU. Plaintiff stated that he was not threatened by any of the three guards with a wooden board during the walk to Division 8, RTU. Plaintiff stated that none of the three guards described above carried any wooden boards when they took plaintiff and the other inmates to Division 8, RTU. Plaintiff stated that no guard threatened him physically with a wooden board in order to get plaintiff to carry his own mattress to where he would be sleeping in Division 8, RTU.

Each inmate receives a screening medical examination at the time of admission to CCDOC. Plaintiff was given an initial medical examination upon entering CCDOC on June 11, 2000. After plaintiff was situated in Division 8, RTU, he told an unnamed guard that he needed special medication for his conditions. The unnamed guard then went and told an unnamed nurse in Division 8, RTU that plaintiff requested medication for his conditions. The nurse then came to plaintiff and took him to Cermak Health Services Emergency Room. At Cermak Health Services Emergency Room, plaintiff was seen by Dr. Benson. Dr. Benson examined plaintiff, who told him of his conditions of myasthma graves and other medical conditions, including the fact that he had neck surgery two years before in 1998. Dr. Benson called Dr. Helgason, plaintiff's treating physician, and spoke with her regarding plaintiff's current medications and his condition. After speaking with Dr. Helgason, Dr. Benson put plaintiff on several medications. At CCDOC, all pharmaceuticals are prescribed in accordance with the formulary approved by the Cermak Health Services Drug and Formulary Committee, and prescriptions are signed by a qualified health professional. Dr. Benson issued eight prescriptions for plaintiff on June 11, 2000. Those prescriptions included: (1) Prednisone; (2) Procardia; (3) Cyclosporin; (4) Calcium

Chloride; (5) Mestinon; (6) Disalsate; (7) Vitamin B 12; and (8) Vitamin B 6. Plaintiff consented to the treatment plan outlined by Dr. Benson by signing his name on the Cermak Health Services of Cook County's Emergency Room Record, dated June 11, 2000. In CCDOC, medications are distributed or administered only by qualified members of the medical staff in accordance with the physician's orders. Dr. Benson directed a nurse to give plaintiff several of his prescribed medications immediately after Dr. Benson prescribed them, which she did in the presence of the doctor. Plaintiff's prescriptions called for Prednisone to be administered once every day; Procardia to be administered once a day; Cyclosporin to be administered two times every day; Calcium Chloride to be administered two times everyday; Mestinon to be administered two times every day; Disalsate to be administered two times every day; Vitamin B6 to be administered one time every day, and for Vitamin B12 to be administered by injection one time after the passage of nine months. Cermak policy requires the nurse who administers the medication to record on a Medication Administration Record (MAR), her initials, the date and the time that each does was administered to an inmate. On June 12, 2000 nurses administered doses of all the prescribed medications (excluding the Vitamin B12 injection, and the Mestinon, which was not available). If for some reason an inmate did not receive his medication at the time the Nurse made her medication administration rounds, the nurse would mark "NP" for "Not Present" on the MAR.

On June 12, 2000 at 9:00 a.m., plaintiff was taken to Branch 35, at 727 E. 11th Street, where he appeared before Judge Fleming. Judge Fleming continued the matter to June 20, 2000 on the motion of the State. Plaintiff was transferred out of Division 8, RTU on June 12 at 11:30 p.m. after posting a D bond. The nurse making the medication administration rounds on June 13,

2000 at 9:00 a.m. noted that plaintiff was "NP" for "Not Present." Plaintiff's sister had delivered medications to the front desk of CCDOC during plaintiff's incarceration between June 11, 2000 to June 12, 2000. When he was discharged, plaintiff was given the medications that his sister delivered. Plaintiff said that the unnamed guard at the front des told him that he couldn't give him the medications while plaintiff was incarcerated because it was against the rules.

II.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). A plaintiff cannot rest on mere allegations, but must go beyond the pleadings and designate specific facts showing a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548 (1986). The Court must review the record in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. See EEOC v. Sears Roebuck & Co., 233 F.3d 432, 436- 37 (7th Cir.2000). Differing accounts of the same set of events can establish the existence of a genuine issue of material fact. Payton v. Rush- Presbyterian-St. Luke Medical Center, 82 F.Supp.2d 901, 909 (N.D.Ill.2000).

III. Discussion

Plaintiff filed this action under 42 U.S.C. § 1983 ("Section 1983") claiming that, as a pretrial detainee, he was not provided with the medication he required for his various medical conditions and was subjected to unlawful physical abuse. The nature of the injury that resulted from defendants' alleged failure to provide the needed medication and physical abuse is unclear. Section 1983 provides a remedy--action at law, suit in equity, or other proper proceeding for redress--to parties deprived of constitutional rights, privileges, and immunities by a state official's abuse of his position. 42 U.S.C. § 1983; Monroe v Pape, 365 US 167, 5 L Ed 2d 492, 81 S Ct 473 (1961). Section 1983 basically seeks to (1) deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights, and (2) provide related relief. Richardson v McKnight, 521 US 399, 138 L Ed 2d 540, 117 S Ct 2100 (1997). Section 1983 is not itself a source of substantive rights, but rather a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes. Baker v McCollan, 443 US 137, 61 L Ed 2d 433, 99 S Ct 2689 (1979).

State pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 n.16, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979); Tesch v. County of Green Lake, 157 F.3d 465, 473 (7th Cir. 1998). The Due Process Clause protects pretrial detainees by prohibiting the State from punishing them. See Bell, 441 U.S. at 535 n.16; Tesch, 157 F.3d at 473. These protections are "at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244, 77 L. Ed. 2d 605, 103 S. Ct. 2979 (1983).

Plaintiff, in his Complaint, names Defendant Sheahan by his office, Sheriff of Cook County, thereby raising a presumption that he is sued only in his official capacity. Duckworth v. Franzen, 780 F.2d 645, 649 (7th Cir. 1985). Actions brought against government officers in their official capacities are actually claims against the government entity for which the officers work. Kentucky v. Graham, 473 U.S. 159, 167 (1985). Although the Supreme Court has held that municipalities are susceptible to liability under Section 1983, Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), "municipalities cannot be held liable for § 1983 claims under a theory of respondeat superior." Garrison v. Burke, 165 F.3d 565, 571 (7th Cir.1999) (citing Monell, 436 U.S. at 691, 98 S.Ct. 2018). Thus, to establish a genuine question of fact as to whether these government entities were deliberately indifferent to Wince's medical needs and physically abusive, Wince is required to establish that the entities have a custom or policy that contributed to the inattention to his medical needs and his resulting injury. Frake v. City of Chicago, 210 F.3d 779, 781 (7th Cir. 2000); Garrison, 165 F.3d at 571; see also Butera v. Cottey, 285 F.3d 601, 605 (7th Cir. 2002) ("[I]f the Sheriff had notice of a substantial risk of serious harm to [plaintiff] ... through the general conditions at the Jail, and he devised no policies or devised inadequate policies to attempt to prevent the assault, he would be 'deliberately indifferent' and [plaintiff] would prevail."); Monell, 436 U.S. at 694, 98 S.Ct. 2018 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). "[T]here must be an affirmative link between the policy and the particular constitutional violation alleged." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

Unconstitutional policies or customs can take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority. Garrison, 165 F.3d 565, 571-72 (quotations omitted); accord Perkins v. Lawson, 312 F.3d 872, 875 (7th Cir.2002); Brokaw v. Mercer County, 235 F.3d 1000, 1013 (7th Cir.2000). In this case, the second type of policy is at issue. In order to impute knowledge to policymakers of a widespread municipal practice, plaintiff must demonstrate a pattern of constitutional violations. Jackson v. Marion County, 66 F.3d 151, 152 (7th Cir. 1995). The number of violations necessary to put a policymaker on notice will depend upon "the connection between the policymaker and the conduct which caused the injury . . . " Williams v. City of Chicago, 658 F.Supp. 147, 152 (N.D. Ill. 1987). Therefore, the further removed the violation is from the actions of the policymaker himself, the more frequent the violations necessary to show notice to the policymaker. Id. Here, plaintiff has not produced any evidence of the Sheriff's actual or implied knowledge of a widespread unconstitutional practice, nor has he shown what policy of the Sheriff's Office he believes has violated his rights. He has also not demonstrated a pattern of constitutional violations as he was never physically touched by any correctional officers and he received medical attention.

Furthermore, a single allegation of wrongdoing on the part of the defendant is insufficient to establish a policy, custom or practice. Sivard v. Pulaski County, 17 F.3d 185, 188 (7th Cir. 1994). Boilerplate allegations of a municipal policy or custom, without any factual allegations to

support the general allegations, are insufficient to state a Section 1983 claim. Hossman v. Blunk, 784 F.2d 793, 797 (7th Cir. 1986). In Hossman, the Seventh Circuit stated: "Alleging one specific incident in which the plaintiff suffered a deprivation and generally alleging a custom or policy will not be adequate; the plaintiff must allege a specific pattern or series of incidents that support the general allegation." Id. "Such boilerplate allegations of an official policy, the existence of which is to be inferred not from something the municipality did but rather from its inaction, constitute one of the most prevalent forms of abuse in section 1983 actions." Rodgers v. Lincoln Towins Service, Inc., 596 F.Supp. 13, 20 (N.D. Ill. 1984). In the present case, plaintiff has not proven a specific pattern or series of incidents supporting his allegation of denial of medical care and unlawful physical abuse; the testimony and evidence adduced fails to raise any support for his claim that the Sheriff has a policy, either express or implied, that caused plaintiff to suffer constitutional injury.

Plaintiff argues, however, that the Sheriff has a policy of inadequately training his officers. To prove that the inadequate training caused Wince's injury, Wince must demonstrate that this omission evidences " 'a deliberate choice to follow a course of action ... from among various alternatives' by city policymakers." City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 1299-1301, 89 L.Ed.2d 452 (1986) (plurality)). In keeping with this, the Court in Canton stated the rule that claims of municipal liability under Section 1983 based on inadequate training "can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." Canton, 489 U.S. at 392, 109 S.Ct. at 1206. What this means in the present context is that before the defendant may

be deliberately indifferent to the constitutional rights of pretrial detainees with medical problems, Wince has to show that the defendant Sheahan was on notice of a pattern of constitutional violations resulting from the inadequate training of jail personnel in recognizing medical need. This notice of violations would have to show that the failure to provide further training was tantamount to a deliberate or conscious decision on the part of the defendants to allow the violations. See Canton, 489 U.S. at 395, 109 S.Ct. at 1208. (O'Connor, J., concurring). Plaintiff, in the present case, has only made conclusory allegations of policy failures, unsupported by actual evidence of deliberate indifference.

Moreover, a failure to train theory or a failure to institute a municipal policy theory requires a finding that the individual officers are liable on the underlying substantive claim. Tesch v. County of Green Lake, 157 F.3d 465, 477 (7th Cir. 1998). Here, plaintiff does not know the identity of the correctional officers who allegedly ignored his requests for medical treatment and who unlawfully physically abused him. Wince failed to name the "unknown police officers" within the statute of limitations period. See Forman v. Richmond Police Department, 104 F.3d 950, 965 (7th Cir.1997) (affirming grant of summary judgment in favor of unknown police officers). Courts look to the personal injury laws of the state where the injury occurred to determine the statute of limitations in a Section 1983 case. Wilson v. Garcia, 471 U.S. 261, 280, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985). Illinois has a two-year statute of limitations for personal injury claims, 735 ILCS 5/13-202 (West 2003). Therefore, Section 1983 claims arising in Illinois are governed by a two-year statute of limitations. See Farrell v. McDonough, 966 F.2d 279 (7th Cir.1992). "[E]very constitutional tort actionable under § 1983 is treated as a personal injury, with the claim accruing when the injury is inflicted." Diaz v. Shallbetter, 984 F.2d 850,

855 (7th Cir.1993). In this case, the alleged injury was inflicted on June 11, 2000, which means that the statute of limitations ran out on June 11, 2002.

Further, even if the plaintiff was to amend his complaint to include the names of the unknown officers, it would not relate back to the original complaint. It has long been the law in the Seventh Circuit that Rule 15(c)(3) of the Federal Rules of Civil Procedure permits an amendment to relate back to the original complaint only " 'where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake." ' Worthington v. Wilson, 8 F.3d 1253, 1256 (7th Cir.1993) (quoting Wood v. Worachek, 618 F.2d 1225, 1230 (7th Cir.1980)). Accordingly, it is equally well established that Rule 15(c)(3) " 'does not permit relation back where ... there is a lack of knowledge of the proper party." ' Id.; see also Delgado-Brunet v. Clark, 93 F.3d 339, 344 (7th Cir.1996). In fact, the Seventh Circuit has emphasized that Rule 15(c)(3) contains a separate "mistake" requirement. See Worthington, 8 F.3d at 1257; Wood, 618 F.2d at 1230. Indeed, "in the absence of a mistake in the identification of the proper party, it is irrelevant for purposes of Rule 15(c)(2) [now Rule 15(c)(3) ] whether or not the purported substitute party knew or should have known that the action would have been brought against him." Wood, 618 F.2d at 1230.

In this case, plaintiffs did not make a mistake concerning the unknown officers' identity when they filed their original complaint; they simply did not know the identity of the correctional officers. Accordingly, if plaintiffs amended their complaint to name the officers, that amendment would not relate back to the filing of the original complaint. Thus, because any amendment to the complaint to name the unknown officers would occur after the expiration of the statute of limitations, the complaint against the unknown officers is dismissed. Accordingly, plaintiff's

-11-

claims against the Sheriff and Cook County are similarly dismissed. See Egebergh v. Sheahan, 2001 U.S. Dist. LEXIS 161, at *14-15 (N.D. Ill., Jan. 3, 2001) (dismissing failure to train claim due to plaintiff's failure to name the officers that allegedly violated plaintiff's constitutional rights).[1]

## Conclusion

For the foregoing reasons, defendants' motion for summary judgment is GRANTED.

Enter:

David H. Coar
United States District Judge

Dated: July 23, 2003

---

[1] Even if this court did not dismiss the claim based on plaintiff's failure to name the officers, the summary judgment motion would still be granted because the facts alleged are not sufficient to support a claim for denial of medical treatment. Plaintiff would have to show that the officers exhibited "deliberate indifference to a serious medical need." Estelle v. Gamble, 429 U.S. 97, 106 (1986). To satisfy this test, it must be shown that the inmate's medical need is sufficiently serious that if left untreated it would amount to a form of cruel and unusual punishment. Farmer v. Brennen, 114 S.Ct. 1970, 1977. Plaintiff must also show that the officials acted with a "sufficiently culpable state of mind." Gutirrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). Plaintiff was examined the day he arrived at CCDOC during the intake process and placed in a unit specifically designated for prisoners with health care issues. Later that same day, plaintiff was seen by Dr. Benson. Plaintiff received medication prescribed by Dr. Benson on the day he arrived, June 11, 2000, and on the next day June 12, 2000, before he bonded out later that night. Considering the totality of the treatment that plaintiff received, plaintiff has not shown that Defendant Sheahan was deliberately indifferent to his medical needs.